IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

              Plaintiff,
     vs.                                    Case No. 11-40038-01/02/03-RDR

SERGIO ESTRADA-AYALA,
FERNANDO DIAZ-MARTINEZ and
CIRIACO ARELLANO-BEBOLLAR,

              Defendants.


                             **MEMORANDUM AND ORDER**

     The three defendants in this case are charged with possession with intent to distribute methamphetamine.  This case arises from a traffic stop.  Defendant Estrada-Ayala was driving a 2001 Ford Taurus eastbound on I-70 in Geary County, Kansas.  Defendants Arellano-Bebollar and Diaz-Martinez were passengers in the Taurus.  This case is before the court upon a motion to suppress filed on behalf of defendant Estrada-Ayala.  Doc. No. 22.  The other two defendants have sought to join in this motion.  Doc. Nos. 24 and 30.  These requests shall be granted.  The court shall also decide a motion to suppress statement filed by defendant Diaz-Martinez.  Doc. No. 29  The court has conducted a hearing upon these motions and is prepared to rule.

     <u>Motion to suppress on behalf of each defendant</u>

     Highway Patrol Trooper Jodi Wolf stopped defendants' 2001 Ford Taurus because she did not observe a license tag on the rear of the

vehicle, although she could observe a piece of paper in the rear window. The paper was a temporary registration certificate from the State of Colorado. It had large bold black letters and numbers on it and it was taped securely to the inside of the rear window. The temporary registration was placed on the passenger side of the rear window approximately halfway between the bottom and top of the glass.

Trooper Wolf followed the Taurus for a period of time but she could hardly see or read the temporary tag. She activated her emergency lights and initiated a traffic stop. The Taurus pulled over promptly. Trooper Wolf approached the driver's side of the vehicle pausing momentarily to glance at the temporary tag. At that point, Trooper Wolf should have been able to clearly read the temporary registration which was valid. There was nothing obscuring her vision of it.

Trooper Wolf informed the driver of the vehicle, defendant Estrada-Ayala, that the traffic stop was made because the car did not have a properly placed license or registration. She said that in Kansas a license or temporary registration is supposed to be displayed on the rear of the vehicle. Then, she inquired about the defendants' travel plans and car insurance and obtained a driver's license from defendant Estrada-Ayala. Trooper Wolf proceeded to take a closer look at the temporary registration, checked the VIN number on the Taurus and walked back to her patrol car.

Eventually, she returned to the Taurus and gave defendant Estrada-Ayala his license and other documents together with a warning ticket for the purported registration violation. She suggested that defendants might move the temporary registration certificate to the driver's side of the rear window because it was "hard to see the other way." She wished defendants well and turned to go back to her patrol car. After a few steps, however, she reversed course and returned to request permission to ask a few more questions. These questions led to a consent to search the vehicle. After a lengthy search and a dog sniff, a hidden compartment holding what is alleged to be methamphetamine was discovered in the Taurus.

Kansas law, K.S.A. 8-133, requires that a license plate be attached "to the rear" of the vehicle "in a place and position to be clearly visible . . . and in a condition to be clearly legible." A violation of this statute constitutes a misdemeanor. K.S.A. 8-149.

Defendants argue that this court must follow the holding in U.S. v. Edgerton, 483 F.3d 1043, 1051 (10th Cir. 2006) and find that defendants' detention should have ended as soon as Trooper Wolf could have determined that defendants were not in violation of K.S.A. 8-133. The government contends that the defendants were in violation of K.S.A. 8-133 because the temporary registration tag was not clearly visible and clearly legible.

In Edgerton, the Tenth Circuit held that a motion to suppress

3

under similar circumstances should have been granted. The court stated:

> The notion that an unobscured, wholly unremarkable Colorado temporary registration tag posted in the rear window of Defendant's vehicle consistent with Colorado law was not "clearly legible" within the meaning of Kan.Stat.Ann. § 8-133 because "it was dark out" proves too much for us. . . .
> Once Trooper Dean was able to read the Colorado tag and deem it unremarkable, any suspicion that Defendant had violated § 8-133 dissipated because the tag was in "a place and position to be clearly visible." At that point . . . Trooper Dean, as a matter of courtesy, should have explained to Defendant the reason for the initial stop and then allowed her to continue on her way without requiring her to produce her license and registration.

The only differences between Edgerton and the instant case are that the traffic stop occurred in broad daylight and the Colorado temporary registration tag was posted on the right side (or passenger side) of the rear window, not the left side.

As in Edgerton, 438 F.3d at 1050, the government does not contend in argument or in the testimony of Trooper Wolf that Kansas law forbids the placement of a temporary registration tag in the rear window of a vehicle or directs its placement in any particular place. The court does note that, according to Edgerton, Colorado motor vehicle regulations state that temporary permits "'may be affixed on the lower lefthand corner of the rear window.'" Id. at 1050 n.8 (citing 1 Colo.Code Regs. § 204-2H). No express argument has been made, however, that defendants were stopped because they violated Colorado traffic requirements as incorporated by Kansas law. The only argument is that the K.S.A. 8-133 requirements of

visibility and legibility were violated and that placement of the temporary permit on the left side of the rear window might have improved the visibility and legibility of the temporary registration tag.

There is no evidence before the court that Trooper Wolf could have seen and read the temporary certificate while driving on I-70 in her patrol car if it had been posted on the driver's side of defendants' rear window. Trooper Wolf testified that defendants may have violated K.S.A. 8-133 even if the temporary tag had been posted on the left side of the rear window. She was not sure whether moving the tag to another part of the rear window would have helped her read the tag. She also admitted that the point of view and angle of the sun could have affected her ability to read the tag from another car. In Edgerton, the court noted that glare and other suboptimal viewing conditions should not determine whether there is a violation of K.S.A. 8-133. Id. at 1050-51.

After careful consideration, the court finds that this case is not substantially different from Edgerton and that Trooper Wolf was mistaken that defendants were in violation of K.S.A. 8-133. Once she was able to read the temporary tag, she should have explained to defendants the reason for the initial stop and then allowed them to continue on their way.

The government has argued that the good faith exception should prevent the application of the exclusionary rule in this case. The

5

court disagrees. The Tenth Circuit has stated: "an officer's mistake of law usually cannot justify a traffic stop under the Fourth Amendment." U.S. v. Orduna-Martinez, 561 F.3d 1134, 1137 (10th Cir. 2009). In the same opinion, the court remarked, "As a rule, if a defendant is presumed to know the law, we must expect as much from law enforcement," and noted that other circuits had held that an officer's "reasonable mistake of law cannot make an otherwise impermissible stop reasonable." Id. at 1138 n. 2.

The cases cited by the government for an exception to the exclusionary rule involve different circumstances than the case at bar. In Herring v. United States, 555 U.S. 135 (2009), there was a negligent error in the maintenance of a police warrant database which the arresting officers relied upon when conducting an arrest and a search. The Supreme Court held that such "isolated," "nonrecurring" police negligence did not warrant the application of the exclusionary rule. Id. at 137. In Davis v. U.S., 131 S.Ct. 2419 (2011), the Court held that the exclusionary rule should not be applied against a search which was conducted in reliance upon binding judicial precedent which was later overruled. The case at bar is distinguishable in our opinion because it involves direct police culpability in making a mistake at law. See Herring, 555 U.S. at 143 (evidence should be suppressed if it can be said that the law enforcement officer had knowledge or may properly be charged with knowledge that the search was unconstitutional under

the Fourth Amendment).

For the above-stated reasons, defendants' motion to suppress shall be granted. Any evidence obtained after Trooper Wolf was able to read the temporary registration tag and determine it was clearly visible and legible shall be suppressed.

Motion to suppress statements of defendant Diaz-Martinez

The court's ruling on the previous motion may make ruling upon this motion unnecessary. However, the court will go forward and decide this motion.

Defendant Diaz-Martinez contends that he did not understand the Miranda warning he was given and that the court should therefore suppress the answers he gave to law enforcement officers when he was interrogated following the Miranda warning. The government bears the burden of proving by a preponderance of the evidence that a waiver of Miranda rights was voluntary and that defendant had "a full awareness both of the nature and the right being abandoned and the consequences of the decision to abandon it." U.S. v. Gell-Iren, 146 F.3d 827, 830 (10th Cir. 1998) (quotations omitted). A waiver of rights must be clear, but it does not have to be express. Id.

The court heard testimony from Kansas Highway Patrol Trooper Mario Rios. Trooper Rios testified that he grew up speaking Spanish and that he is fluent in Spanish. He testified that he assisted another trooper in interviewing defendant Diaz-Martinez

7

first by reading the Miranda warning in Spanish and then interpreting questions and answers. Trooper Rios stated that defendant Diaz-Martinez did not respond directly to the Miranda warning. He did not say that he understood the warning or that he did not understand the warning. But, defendant Diaz-Martinez indicated a willingness to speak and gave a brief interview in which he was responsive to the questions which were asked. Trooper Rios believed that defendant Diaz-Martinez understood the warning and noted that defendant never objected to the questions or stated that he did not understand. He felt that defendant Diaz-Martinez was speaking freely and voluntarily.

There is a limited amount of evidence before the court. Upon review of that evidence, the court believes the government has met its burden of proving by a preponderance of the evidence that defendant Diaz-Martinez made a knowing and voluntary waiver of his rights after receiving a Miranda warning. Therefore, if the statements of Diaz-Martinez were not suppressed by reason of the court's ruling upon the previous motion, the court would deny the motion to suppress arguing that defendant Diaz-Martinez did not make a knowing and voluntary waiver of his Miranda rights.

Conclusion

In conclusion, the court shall grant the motion to suppress filed on behalf of defendant Estrada-Ayala and joined in by defendants Arellano-Bebollar and Diaz-Martinez. The court shall

deny the motion to suppress filed by defendant Diaz-Martinez.

**IT IS SO ORDERED.**

Dated this 14th day of September, 2011 at Topeka, Kansas.

           s/Richard D. Rogers
           United States District Judge